IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ROBERT FOSTER; KATIE LIGON; KIRBY CARTER; JOHN T. WILLIAMS**                                        **PLAINTIFFS**

**VS.**                                        **CIVIL ACTION NO.:** 3:26-CV-181-MPM-JMV

**THE STATE OF MISSISSIPPI; THE STATE BOARD OF ELECTION COMMISSIONERS; TATE REEVES, in his official capacities as Governor of the State of Mississippi and a Member of the State Board of Election Commissioners; LYNN FITCH, in her official capacities as the Mississippi Attorney General and a Member of the State Board of Election Commissioners; and MICHAEL WATSON, in his official capacities as the Mississippi Secretary of State and a Member of the State Board of Election Commissioners**                                        **DEFENDANTS**

## VERIFIED COMPLAINT

Robert Foster, Katie Ligon, Kirby Carter, and John T. Williams (together, "Plaintiffs"), bring this action challenging House Bill 1544 (2025 Regular Session, H.B. 1544) and Senate Bill 2768 (2025 Regular Session, S.B. 2678) under the Fourteenth and Fifteenth Amendments to the United States Constitution, the Voting Rights Act, and Section 87 of the Mississippi Constitution.

## INTRODUCTION

1.      The right to vote on an equal basis with other citizens is a fundamental right in a free society, and that right may not be denied or abridged on account of a citizen's address within any given jurisdiction or, of course, due to a citizen's race.

2.      In April 2025, the State of Mississippi passed into law H.B. 1544 and S.B. 2768, effective upon enactment, which continued to define DeSoto County as its own circuit court district, but, effective January 1, 2027, reorganized Desoto County as its own chancery court district.

PD.62456151.1

3.  H.B. 1544 and S.B. 2768 also gave Desoto County, effective January 1, 2027, one additional circuit judge and one additional chancellor to be added to DeSoto County's existing three circuit judges and two chancellors, the latter of which are elected from every precinct in the County.

4.  However, H.B. 1544 and S.B. 2768 specifically mandated that this new fourth circuit judge and new third chancellor, with authority and jurisdiction over the entire county, would only be elected from a racially-gerrymandered, majority-minority subdistrict within the County, made up of only nine (9) of Desoto County's forty-seven (47) precincts, encompassing just 22.6% of DeSoto County's voting-age population (the "Majority-Minority Subdistrict").

5.  In other words, H.B. 1544 and S.B. 2768 created a race-based, Majority-Minority Subdistrict within DeSoto County, and the Majority-Minority Subdistrict's precincts will elect DeSoto County's Place Four circuit judge and Place Three chancellor in November 2026, while the Place One, Place Two, and Place Three circuit judges and the Place One and Place Two chancellors will continue to be elected from every precinct within DeSoto County, including those in the Majority-Minority Subdistrict.  Stated more plainly, DeSoto Countians living within the Majority-Minority Subdistrict have four votes for DeSoto County's circuit judges and three votes for DeSoto County's chancellors, whereas DeSoto Countians living outside the Majority-Minority Subdistrict get only three votes for DeSoto County's circuit judges and two votes for DeSoto County's chancellors.

6.  Thus, while all four circuit judges and three chancellors have jurisdiction and authority over all citizens of Desoto County, the residents outside the Majority-Minority Subdistrict are unfairly restricted to voting in elections for only three circuit judges and two chancellors, while the residents of the Majority-Minority Subdistrict unjustly benefit by being authorized to vote in elections for all four circuit judges and three chancellors.

7. Standing alone, that electoral scheme is offensive to the United States Constitution, federal law, and the Mississippi Constitution.

8. But to make matters worse, if one considers why the State of Mississippi created the Majority-Minority Subdistrict and gave it the exclusive franchise in selecting two of DeSoto County's judges, H.B. 1544 and S.B. 2768 are even more indefensible. The State's only proffered reason for creating the Majority-Minority Subdistrict and this electoral scheme within DeSoto County, and the only reason discernable from context and statistics too, was race.

9. Thus, H.B. 1544 and S.B. 2768 facially deprive 77.4% of DeSoto County residents of the right to vote for one of their circuit judges and one of their chancellors, treating such residents unequally and unfairly as related to residents in the Majority-Minority Subdistrict, and the only explanation given by the State or discernable from context or statistics is that the Majority-Minority Subdistrict was created for no reason other than race.

10. Racially motivated and mathematically problematic, H.B. 1544 and S.B. 2768 are doubly unconstitutional and violate federal law as they treat similarly situated citizens unequally and deny 3 out of 4 DeSoto Countians the right to vote based on race.

## PARTIES

11. Plaintiff Robert Foster ("Foster") resides in DeSoto County, Mississippi. He is a U.S. citizen and a lawfully registered voter who resides in the Twenty-first Circuit Court District established by H.B. 1544 and in the Seventeenth Chancery Court District established by S.B. 2768. Foster does not reside within the Majority-Minority Subdistrict in either the Twenty-first Circuit Court District or the Seventeenth Chancery Court District established by H.B. 1544 and S.B. 2768. Foster plans to vote in the November 2026 general election and would vote for the Place Four circuit judge and the Place Three chancellor created by H.B. 1544 and S.B. 2768 if allowed.

12.     Plaintiff Katie Ligon ("Ligon") resides in DeSoto County, Mississippi. She is a U.S. citizen and a lawfully registered voter who resides in the Twenty-first Circuit Court District established by H.B. 1544 and in the Seventeenth Chancery Court District established by S.B. 2768. Ligon does not reside within the Majority-Minority Subdistrict in either the Twenty-first Circuit Court District or the Seventeenth Chancery Court District established by H.B. 1544 and S.B. 2768. Ligon plans to vote in the November 2026 general election and would vote for the Place Four circuit judge and the Place Three chancellor created by H.B. 1544 and S.B. 2768 if allowed.

13.     Plaintiff Kirby Carter ("Carter") resides in DeSoto County, Mississippi.  She is a U.S. citizen and a lawfully registered voter who resides in the Twenty-first Circuit Court District established by H.B. 1544 and in the Seventeenth Chancery Court District established by S.B. 2768. Kirby resides within the Majority-Minority Subdistrict established by H.B. 1544 and S.B. 2768 in the Twenty-first Circuit Court District and the Seventeenth Chancery Court District.  Carter plans to vote in the November 2026 general election, and as a White voter within the Majority-Minority Subdistrict, her vote is unconstitutionally diluted based on race.

14.     Plaintiff John T. Williams ("Williams") resides in DeSoto County, Mississippi.  He is a U.S. citizen and a lawfully registered voter who resides in the Twenty-first Circuit Court District established by H.B. 1544 and in the Seventeenth Chancery Court District established by S.B. 2768.  Williams does not reside within the Majority-Minority Subdistrict in either the Twenty-first Circuit Court District or the Seventeenth Chancery Court District established by H.B. 1544 and S.B. 2768.  Williams plans to vote in the November 2026 general election and would vote for the Place Four circuit judge and the Place Three chancellor created by H.B. 1544 and S.B. 2768 if allowed.

4

15. Defendant the State of Mississippi is one of the fifty states making up the United States of America and is obligated to ensure that its laws are consistent with federal law, as well as those provisions of the United States and Mississippi Constitutions.

16. Defendant the State Board of Election Commissioners is comprised of the Governor of Mississippi, the Mississippi Attorney General, and the Mississippi Secretary of State. MISS. CODE ANN. § 23-15-211(1). "The duties of the board shall include, but not be limited to, . . . [a]pproving the state ballot for the offices [the "statewide, Supreme Court, Court of Appeals, congressional district, circuit and chancery court district, and other state district offices"]." *Id.* at (2)(b).

17. Defendant Tate Reeves is sued in his official capacities as the Governor of the State of Mississippi and as a member of the State Board of Election Commissioners. He is "vested" with "[t]he chief executive power of [Mississippi]" and "shall see that the laws are faithfully executed." MISS. CONST. Art. V, §§ 116, 123. "All commissions shall be in the name and by the authority of the State of Mississippi, be sealed with the great seal of the state, and be signed by the Governor, and attested by the Secretary of State." MISS. CONST. Art. V, § 127. He possesses the exclusive authority to not only commission those judges elected to the bench but also to fill vacancies as they arise in both circuit and chancery courts within the state. MISS. CODE ANN. § 9-1-103. He also has the "power to convene the Legislature in extraordinary session whenever, in his judgment, the public interest requires it." MISS. CONST. Art. V, § 121.

18. Defendant Lynn Fitch is sued in her official capacities as the Mississippi Attorney General and a member of the State Board of Election Commissioners. In her role as the Mississippi Attorney General, she is "the chief legal officer and advisor for the state, both civil and criminal, and is charged with managing all litigation on behalf of the state . . . ." MISS. CODE ANN. § 7-5-1. She "shall intervene and argue the constitutionality of any statute . . . ." MISS. CODE ANN. § 7-5-1.

5

She is also vested with all power of the Attorney General held at common law, including "the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the State, preservation of order and the protection of public rights." *See, e.g.*, *Fitch v. White*, --- So. 3d ----, 2026 WL 1692848, at *2–3 (Miss. June 11, 2026); *Gandy v. Reserve Life Ins. Co.*, 279 So. 2d 648, 649 (Miss. 1973).

19.     Defendant Michael Watson is sued in his official capacities as the Mississippi Secretary of State and a member of the State Board of Election Commissioners.  Among other things, he "shall perform . . . duties as may be required of him by law."  MISS. CONST. Art. V, § 133.  Mississippi law designates the Secretary of State as "the chief election officer of the State of Mississippi."  MISS. CODE ANN. § 23-15-211.1.  "Returns of all elections by the people shall be made to the Secretary of State in such manner as shall be provided by law."  MISS. CONST. Art. IV, § 114.  "All commissions shall be . . . attested by the Secretary of State."  MISS. CONST. Art. V, § 127.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action brought under, *inter alia*, 42 U.S.C. §§ 1983 and 1988, 28 U.S.C. § 2201–02, and 52 U.S.C. § 10301–02 pursuant to 28 U.S.C. §§ 1331, 1343, and 1357 because the matters in controversy arise under the Constitution and the laws of the United States and because this is a case in which Plaintiffs seek to enforce the right of citizens of the United States to vote.

21.     In addition, this Court has supplemental jurisdiction over the claims brought under the Mississippi Constitution pursuant to 28 U.S.C. § 1367, as these claims form part of the same case or controversy.

22.     This Court possesses the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–02, as well as 28 U.S.C. § 1651, and such relief is authorized by Rule 57 and Rule 65 of the Federal Rules of Civil Procedure.

23.     This Court has personal jurisdiction over Defendants because each is a citizen of the State of Mississippi or officer or commission of the State of Mississippi.

24.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district insofar as the legislation challenged was targeted at and directly affects DeSoto County, a political subdivision of the State of Mississippi located within this district.

<strong>STATEMENT OF FACTS</strong>

25.     Mississippi's circuit and chancery courts are established by the Mississippi Constitution, and circuit and chancery court districts are drawn by the Legislature within five years after each decennial census, or if the Legislature fails to do so within five years, the Mississippi Supreme Court conducts judicial redistricting.  MISS. CONST. Art. VI, § 152.

26.     After the 2020 decennial census, during the 2025 Regular Session, the Mississippi Legislature undertook judicial redistricting, enacting H.B. 1544 and S.B. 2768, comprehensive legislation that substantially reorganized and restructured Mississippi's chancery and circuit court districts based on the 2020 census data.

27.     Governor Tate Reeves signed H.B. 1544 and S.B. 2768 into law on April 23, 2025.

28.     Together, H.B. 1544 and S.B. 2768 restructure the geographic boundaries of numerous judicial districts throughout Mississippi, reallocate judicial positions among those districts, create new judicial districts, eliminate or reorganize existing judicial districts, and establish new judicial offices to be filled by the 2026 general elections, with some alterations to

7

the circuit and chancery court districts taking effect upon S.B. 2768 and H.B. 1544's passage and others taking effect on January 1, 2027.

29.     H.B. 1544 is focused on redistricting Mississippi's circuit court districts.  It revises Mississippi's circuit court districts and reallocates circuit judgeships throughout the State.

30.     S.B. 2768 reorganizes Mississippi's chancery court districts by drawing district boundaries, reallocating chancellorships, and creating new chancery court districts throughout the state.

31.     DeSoto County is Mississippi's most populous county, and it has experienced substantial growth over the past several decades.

32.     To accommodate that growth, the Legislature allocated an additional circuit judge and an additional chancellor to DeSoto County through the passage of H.B. 1544 and S.B. 2768, and redefined DeSoto County as its own circuit and chancery court district.

33.     Both H.B. 1544 and S.B. 2768 also substantially changed the manner in which DeSoto County voters elect their circuit judges and chancellors.

34.     Among other things, H.B. 1544 renumbered the circuit court district made up of solely DeSoto County (formerly the Twenty-third Circuit Court District) as the Twenty-first Circuit Court District, effective January 1, 2027.

35.     H.B. 1544 provides that until January 1, 2027, the Twenty-first Circuit Court District will have three circuit judges, all of whom are elected from every precinct within the district, *i.e.*, DeSoto County.

36.     H.B. 1544 further provides that from and after January 1, 2027, the Twenty-first Circuit Court District will gain a fourth circuit judge to preside over the entire district, *i.e.*, DeSoto County, but will only be elected in November 2026 exclusively from nine (9) precincts: "Horn Lake Central, Horn Lake East, Horn Lake High School*, Horn Lake Intermediate School, Horn

8

Lake North, Horn Lake West, Northwest Community College*, Southhaven [sic] South and Southhaven [sic] West*" (the "Majority-Minority Subdistrict"). The other three pre-existing circuit judges will continue to be elected from every precinct within the district, *i.e.*, DeSoto County.



37. Before the enactment of S.B. 2768, DeSoto County was part of the Third Chancery Court District along with Grenada, Montgomery, Panola, Tate, and Yalobusha Counties. But effective January 1, 2027, S.B. 2768 removes DeSoto County from the Third Chancery Court District and creates the Seventeenth Chancery Court District consisting solely of DeSoto County.

38. From and after January 1, 2027, S.B. 2768 creates three chancellorships within the Seventeenth Chancery Court District. Two of those chancellors will be elected from every precinct within the district, *i.e.*, DeSoto County, whereas the third chancellor will be elected in November 2026 exclusively from the Majority-Minority Subdistrict created by S.B. 2768, including only the following nine (9) precincts: "Horn Lake Central, Horn Lake East, Horn Lake High School*, Horn Lake Intermediate School, Horn Lake North, Horn Lake West, Northwest Community College*,

Southhaven [sic] South and Southhaven [sic] West*." The Majority-Minority Subdistrict created in S.B. 2768 is the same one created in H.B. 1544.

39. Unless enjoined, the State of Mississippi will conduct future judicial elections, beginning in November 2026, under the district boundaries and judicial offices established by H.B. 1544 and S.B. 2768, and those elections will determine the judges who will exercise authority over the citizens of DeSoto County beginning January 1, 2027.

40. Plaintiffs are registered and qualified electors residing in DeSoto County. Plaintiffs vote in elections for circuit judges and chancellors and are eligible to vote in the judicial elections that will be conducted under the new districts provided for by H.B. 1544 and S.B. 2768.

41. Plaintiffs are directly and adversely affected by the implementation of H.B. 1544 and S.B. 2768 because the challenged legislation changes the judicial districts in which they vote, the judicial offices for which they may vote, the electorate participating in those elections, and the manner in which judicial representation is elected and allocated within the affected judicial districts pursuant to H.B. 1544 and S.B. 2768.

42. Absent declaratory and injunctive relief, Plaintiffs—who have voted in past elections and are committed to voting in the upcoming elections—will suffer continuing and irreparable injury by being forced to participate in future judicial elections conducted under the challenged statutory scheme, which treats Plaintiffs unfairly and differently from similarly situated Desoto County voters, and by being denied the right to vote in the upcoming November 2026 elections and future elections through the administration of elections conducted pursuant to H.B. 1544 and S.B. 2768 for no reason other than race.

43. If the upcoming November 2026 elections are allowed to proceed, Plaintiffs will also be affected by decisions issued by these elected judges for which Plaintiffs were denied their right to vote for or against such judges, and Plaintiffs will also be affected by the incumbency that

10

will arise for judges elected under the maps drawn by H.B. 1544 and S.B. 2768 insofar as their vote will lose weight in any subsequent attempt to oust incumbent judicial officers elected by the Majority-Minority Subdistrict.

**CLAIMS FOR RELIEF**

**COUNT I: VOTE DENIAL REGARDLESS OF RACE**
**(Violation of the Fourteenth Amendment)**

44.     This Count hereby incorporates the allegations set forth in all preceding paragraphs as if fully set forth herein.

45.     The Fourteenth Amendment to the U.S. Constitution provides in relevant part: "No State shall make or enforce any laws which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. Amend. XIV, § 2.

46.     H.B. 1544 and S.B. 2768 fundamentally alter the manner in which qualified electors residing in DeSoto County participate in the election of circuit judges and chancellors.

47.     Before the enactment of the challenged legislation, qualified electors throughout DeSoto County were entitled to participate equally in the election of the circuit judges and chancellors serving the judicial districts in which DeSoto County was located.

48.     H.B. 1544 and S.B. 2768 created the Majority-Minority Subdistrict within DeSoto County from which the Place Four circuit judge and Place Three chancellor will be elected, while leaving other circuit judges and chancellors in Desoto County to be elected at-large by all qualified electors residing within the county.

49.     Consequently, the legislation malapportions and establishes two separate and unequal classes of qualified electors within DeSoto County. One class of electors, living within

11

the Majority-Minority Subdistrict, is permitted to vote for all circuit judges and chancellors in the county, while the other class of otherwise qualified electors, living outside the Majority-Minority Subdistrict, is categorically prohibited from participating in those same elections solely because they reside outside the boundaries of the Majority-Minority Subdistrict.

50.     Stated differently, the voters living outside the Majority-Minority Subdistrict may only vote for the Place One, Place Two, and Place Three circuit judges and the Place One and Place Two chancellors without any vote on the Place Four circuit judge and Place Three chancellor, whereas voters within the Majority-Minority Subdistrict may vote for all circuit judges and chancellors within the district as a whole, thereby giving the Majority-Minority Subdistrict's residents four circuit judge votes and three chancellor votes while leaving non-Majority-Minority Subdistrict residents of DeSoto County only three circuit judge votes and two chancellor votes.

51.     The circuit judges and chancellors elected from the Majority-Minority Subdistrict exercise the same constitutional and statutory authority as the judges elected countywide, presiding over matters arising throughout DeSoto County, hearing cases involving litigants from every part of DeSoto County, and exercising judicial authority over all citizens residing within DeSoto County, regardless of whether those citizens were permitted to vote in their elections.

52.     As a result, many qualified electors residing in DeSoto County are arbitrarily denied any opportunity to vote for judicial officers who nevertheless exercise judicial authority over them and their property.  Conversely, electors residing within the Majority-Minority Subdistrict are afforded the opportunity to participate in the election of judicial officers for whom other similarly situated DeSoto County electors may not vote.

53.     H.B. 1544 and S.B. 2768 therefore afford unequal voting rights to otherwise similarly situated qualified electors residing within the same county and denies DeSoto County

12

residents living outside the Majority-Minority Subdistrict the right to vote for the Place Four circuit judge and Place Three chancellor, both of whom will preside over all of DeSoto County.

## COUNT II: VOTE DENIAL BASED ON RACE
### (Violation of the Fourteenth Amendment, Fifteenth Amendment, and Section 2 of the Voting Rights Act)

54.     This Count hereby incorporates the allegations set forth in all preceding paragraphs as if fully set forth herein.

55.     The Legislature intentionally determined which qualified electors would and would not be permitted to vote for the newly created judicial offices by drawing the Majority-Minority Subdistrict's boundaries within DeSoto County.

56.     As reflected in the legislative record, committee proceedings, floor debate, and conference committee proceedings, the Majority-Minority Subdistrict's boundaries were drawn for the purpose of creating Majority-Minority Subdistricts that would provide minority voters an opportunity to elect their preferred candidates.  Legislators expressly acknowledged during floor debates that the Majority-Minority Subdistrict was intentionally configured to achieve that objective.

57.     Specifically, during the floor debates in both the Mississippi House of Representatives and the Mississippi Senate, the debating legislators agreed that Majority-Minority Subdistricts are primarily and have historically been a mechanism for adding African American judges to Mississippi's judiciary.

58.     Representative Kevin Horan—the author of H.B. 1544—acknowledged that the population shifts out of the Delta led to districts being collapsed together, while noting the legislation does create additional majority black subdistricts in other parts of the state.

59.     And in response to concerns about the effect of H.B. 1544 and S.B. 2768 on the ability of black judges to be elected in Mississippi, Representative Horan pointed to DeSoto

13

PD.62456151.1

County and other judicial districts as examples of places where such Majority-Minority Subdistricts were created under H.B. 1544, explaining that "if you look in DeSoto County, that Majority-Minority Subdistrict is a Majority-Minority Subdistrict that allows in DeSoto County—will have an increasing majority-minority population for those individuals in that Majority-Minority Subdistrict to elect the candidate of their choice. The same way with the chancery district in Lowndes County that covers part of Starkville. And in Forrest County that covers part of the downtown area. We are increasing African American BVAP or APBVAP districts."

60.     Representative Horan explicitly stated, "we have created additional African American subdistricts."

61.     When the House took up S.B. 2768, it amended the bill to include the Majority-Minority Subdistricts at issue here for both DeSoto County's circuit and chancery court districts. During the House floor debate, Representatives acknowledged that amendments were made to address majority-minority districts, including those in Lee and Monroe counties.

62.     Similarly, during the Senate floor debate, Senator Brice Wiggins, who first introduced S.B. 2768, referenced the creation of a majority-minority district in DeSoto County.

63.     The statistics used by the State bear out those characterizations the sponsoring and authoring legislators of H.B. 1544 and S.B. 2768. According to the State's data, the Majority-Minority Subdistrict's voting-age population is 50.52% any part black and 40.83% white, whereas DeSoto County's entire voting-age population is 24.85% any part black and 67.13% white.

64.     From the floor debates, statements by the authors and sponsors of H.B. 1544 and S.B. 2768, context, and statistics, it is clear that race predominated over traditional districting principles in the creation of the Majority-Minority Subdistrict. Traditional districting principles,

14

including compactness, contiguity, maintaining communities of interest and traditional boundaries, respect for political subdivisions, and preserving the core of existing districts, were subordinated to racial considerations in creating the Majority-Minority Subdistrict.

65. By dividing DeSoto County into judicial subdistricts based on race, the challenged legislation classifies qualified electors according to where they reside within racially configured districts and determines whether they may vote for particular judicial officers on that basis.

66. As a direct consequence of the challenged legislation, Plaintiffs and other similarly situated qualified electors residing outside the judicial Majority-Minority Subdistrict are denied the opportunity to vote for judicial officers who exercise county-wide jurisdiction and authority over them.

67. The State is not only discriminating against voters outside the Majority-Minority Subdistrict, but it has unlawfully diluted the voting power of white voters within the Majority-Minority Subdistrict for no reason other than race.

68. The deprivation of the opportunity to vote for those judicial officers is ongoing and will continue in every judicial election conducted pursuant to S.B. 2768 and H.B. 1544 unless the challenged provisions are declared unconstitutional and permanently enjoined.

**Count III: Violation of the Mississippi Constitution**

69. This Count hereby incorporates the allegations set forth in all preceding paragraphs as if fully set forth herein.

70. Section 87 of the Mississippi Constitution provides that "No special or local law shall be enacted for the benefit of individuals . . . in cases which are or can be provided by general law, or where the relief sough can be given by any court of this State." MISS. CONST. Art. IV, § 87.

PD.62456151.1

71.     Section 90 of the Mississippi Constitution then provides certain categories of local or special laws that courts may hold violative of Section 87, reading in relevant part: "The Legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided only by general laws, viz . . . "[c]reating, increasing, or decreasing the fees, salary, or emoluments of any public officer, . . . [p]roviding for the creation of districts for the election of justices of the peace and constables[.]"  MISS. CONST. Art. IV, § 90(o), (t).

72.     The Mississippi Legislature exceeded its constitutional authority in passing H.B. 1544 and S.B. 2768 during its 2025 Regular Session, as the creation of the Majority-Minority Subdistrict benefits only the private black citizens residing within the Majority-Minority Subdistrict by redistricting a judicial district through special or local laws that unreasonably and arbitrarily create a judicial Majority-Minority Subdistrict and created new judgeships to be exclusively filled by voters within the Majority-Minority Subdistrict.

73.     Indeed, the State has no reasonable or non-arbitrary basis for creating the Majority-Minority Subdistrict at issue, as the Majority-Minority Subdistrict was specifically drawn for the sole purpose of benefitting a small subset of Mississippians—black residents of the Majority-Minority Subdistrict, only about 12,612 of whom are of voting age.

74.     Thus, H.B. 1544 and S.B. 2768 are unconstitutional special or local laws passed in violation of Sections 87 and 90 of the Mississippi Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Declare the challenged districts adopted in H.B. 1544 and S.B. 2768 to be unconstitutional, as they deny the constitutionally protected right to vote and to participate in

16

PD.62456151.1

elections on an equal basis with other citizens in DeSoto County in violation of the Fourteenth Amendment;

B. Declare the challenged districts adopted in H.B. 1544 and S.B. 2768 a violation of Section 2 of the Voting Rights Act of 1965;

C. Preliminarily and permanently enjoin Defendants and their agents from holding elections in the judicial districts adopted in H.B. 1544 and S.B. 2768 and any adjoining districts necessary to remedy the federal constitutional and statutory violations;

D. Order a new qualifying deadline to be set and a special election to be held for the judgeships at issue, or at the very least, reopen the qualifying deadline for the judgeships at issue in the upcoming November 2026 general election and permit all voters in DeSoto County to participate in the election of those judges.

E. Order expedited hearings and briefings, consider evidence, and take any other action necessary for the Court to order federal constitutional and statutorily compliant plans for the new Majority-Minority Subdistrict in DeSoto County;

F. Set an immediate and reasonable deadline for the State of Mississippi to adopt and enact circuit and chancery court redistricting plans that do not subject DeSoto County voters to intentionally discriminatory districts and do not violate the United States Constitution, the Voting Rights Act, and the Mississippi Constitution;

G. Award Plaintiffs' their costs, expenses, and disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to and in accordance with 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988;

H. Retain jurisdiction over this matter until all Defendants have complied with all orders and mandates of this Court; and

I. Grant such other relief as the Court may deem just and proper.

17

Dated: July 2, 2026.

Respectfully submitted,

PHELPS DUNBAR LLP


BY:  */s/ Nicholas F. Morisani*
        D. Michael Hurst, Jr., MB #99990
        Nicholas F. Morisani, MB #104970
        Sonya C. Dickson, MB #106284
        Channing J. Curtis, MB #106637
        1905 Community Bank Way
        Suite 200
        Flowood, Mississippi 39232
        Telephone: 601 352 2300
        Facsimile: 601 360 9777
        mike.hurst@phelps.com
        nick.morisani@phelps.com
        sonya.dickson@phelps.com
        channing.curtis@phelps.com

**ATTORNEYS FOR PLAINTIFFS**

18

PD.62456151.1