IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ROBERT FOSTER, KATIE LIGON,
KIRBY CARTER, and JOHN T. WILLIAMS                    PLAINTIFFS

v.                                       CIVIL ACTION NO. 3:26-CV-181-SA-JMV

THE STATE OF MISSISSIPPI, et al.                       DEFENDANTS

ORDER AND MEMORANDUM OPINION

On July 2, 2026, Robert Foster, Katie Ligon, Kirby Carter, and John T. Williams filed their Verified Complaint [1] against the State of Mississippi, the State Board of Election Commissioners, Governor Tate Reeves, Attorney General Lynn Fitch, and Secretary of State Michal Watson. This lawsuit concerns portions of House Bill 1544 and Senate Bill 2768, which the Mississippi Legislature passed into law in April 2025 and which take effect January 1, 2027.

The Plaintiffs allege that the subject legislation, which concerns the reorganization of DeSoto County's chancery court and circuit court districts and the manner in which citizens elect judges thereunder, violates the Fourteenth and Fifteenth Amendments to the United States Constitution, Section 2 of the Voting Rights Act, and Section 87 of the Mississippi Constitution.

Along with their Complaint [1], the Plaintiffs also filed a Motion for Preliminary Injunction [3] on July 2, 2026. That Motion [3], which seeks relief in connection with the upcoming November 3, 2026 election, is set for an evidentiary hearing commencing on July 31, 2026.

On July 8, 2026, Malenda Harris Meacham, who is one of two qualified candidates seeking election in Chancery Court District 17-1, Place 3 in the new chancery court district, filed a Motion to Intervene [15]. She seeks permission to intervene as of right or, in the alternative, permissive intervention.

On July 16, 2026, DeSoto County NAACP and Delta Sigma Theta Sorority (collectively the "Organizational Intervenors") jointly filed a Motion to Intervene [32], seeking to "protect the interests of Black residents in DeSoto County[.]" [33] at p. 3. Like Meacham, they seek intervention as of right or, alternatively, permissive intervention.

At the Court's direction, the parties completed expedited briefing pertaining to both Motions [15, 32]. Having reviewed those filings, as well as the applicable authorities, the Court is prepared to rule.

*Relevant Background*

Article 6, § 152 of the Mississippi Constitution requires that the Mississippi Legislature redraw the State's circuit and chancery court districts within five years of each decennial census. *See* MISS. CONST. Art. 6, § 152. Consistent with this requirement, in April 2025, the Legislature passed H.B. 1544, which reconfigured the State's circuit court districts, and S.B. 2768, which concerned the chancery court districts.

Section 38 of H.B. 1544, which is codified at Mississippi Code Section 9-7-63, designated DeSoto County as its own circuit court district. *See* MISS. CODE ANN. § 9-7-63 ("The Twenty-first Circuit Court District shall be composed of DeSoto County."). Section 39 of H.B. 1544, which is codified at Code Section 9-7-64, provided for three circuit judges for the district to be elected from the entire district on an at-large basis. H.B. 1544 § 39, 2025 Reg. Sess., 125th Sess. (Miss. 2025); MISS. CODE ANN. § 9-7-64 (effective until December 31, 2026). But that Section also includes language modifying the statute effective January 1, 2027. *Id*. Effective that date, the statute will provide as follows:

> (1)    There shall be four (4) circuit judges for the Twenty-first Circuit Court District.

(2)     For the purposes of appointment and election, the four (4) judgeships shall be separate and distinct and denominated as "Place One", "Place Two", "Place Three" and Place Four". The judges to fill Place One, Place Two and Place Three shall be elected from within the district. Place Four shall be a subdistrict denominated as 21-1. The judge to fill Place Four shall be elected from the following precincts in DeSoto County: Horn Lake Central, Horn Lake East, Horn Lake High School, Horn Lake Intermediate School, Horn Lake North, Horn Lake West, Northwest Community College, Southhaven South and Southhaven West.

*Id.*; MISS. CODE ANN. § 9-7-64 (effective Jan. 1, 2027).

Thus, applying this language, three of the circuit judges are to be elected from the entire district (or, in this case, the entire county), and one of the judges is to be elected from a subdistrict consisting of nine specific precincts. However, the judge elected from the subdistrict will have jurisdiction over the entire district.

S.B. 2768 concerns chancery court districts. Pursuant to Section 23 thereunder, effective January 1, 2027, DeSoto County will constitute its own chancery court district with the specific statutory language providing:

(1)     The Seventeenth Chancery Court District is composed of DeSoto County.

(2)     There shall be three (3) chancellors for the Seventeenth Chancery Court District. The chancellorships shall be separate and distinct and denominated as "Place One," "Place Two" and "Place Three." The chancellor to fill Place One and Place Two shall be elected from all of the precincts within the district. Place Three shall be a subdistrict denominated as 17-1 for purposes of appointment and election. The chancellor to fill Place Three shall be elected from the following precincts in DeSoto County: Horn Lake Central, Horn Lake East, Horn Lake High School, Horn Lake Intermediate School, Horn Lake North, Horn Lake West, Northwest Community College, Southhaven South and Southhaven West.

3

S.B. 2768 § 27, 2025 Reg. Sess., 125th Sess. (Miss. 2025); MISS. CODE ANN. § 9-5-51 (effective Jan. 1, 2027).

Thus, elections for chancellors in this district are structured in the same manner as circuit judgeships. Two chancellors are to be elected on a districtwide (or countywide) basis, and one chancellor is to be elected from the same subdistrict as applicable to circuit judgeship Place Four. Like the circuit judge elected from the subdistrict, the chancellor elected from this district will have jurisdiction over the entire district.

Of particular importance for purposes of this litigation is the racial makeup of DeSoto County as a whole and the subject subdistrict in particular. According to the Complaint [1], "the Majority-Minority Subdistrict's voting-age population is 50.52% any part black and 40.83% white, whereas DeSoto County's entire voting-age population is 24.85% any part black and 67.13% white." [1] at p. 14.

Although the statutory language reorganizing the chancery and circuit districts and the electoral structure are not effective until January 1, 2027, elections for those positions are set to take place on November 3, 2026. The qualifying window for the 21-1 circuit court subdistrict and 17-1 chancery court subdistrict was January 2, 2026 through February 2, 2026. Two candidates qualified for each position with Lucius Edwards and John Hughes qualifying for the circuit court position and Gwendolyn Baptist and Malenda Harris Meacham qualifying for the chancery court position.

Subsequent to the passage of qualification deadlines and candidates beginning to campaign, the Plaintiffs initiated this lawsuit on July 2, 2026. Some context as to the individual Plaintiffs is needed. Robert Foster, Katie Ligon, and John T. Williams are three of the four

4

Plaintiffs, and the Complaint [1] provides the same description for each of them as to their standing in this litigation:

> Plaintiff Robert Foster resides in DeSoto County, Mississippi. He is a U.S. citizen and a lawfully registered voter who resides in the Twenty-first Circuit Court District established by H.B. 1544 and in the Seventeenth Chancery Court District established by S.B. 2768. Foster does not reside within the Majority-Minority Subdistrict in either the Twenty-first Circuit Court District or the Seventeenth Chancery Court District established by H.B. 1544 and S.B. 2768. Foster plans to vote in the November 2026 general election and would vote for the Place Four circuit judge and the Place Three chancellor created by H.B. 1544 and S.B. 2768 if allowed.

[1] at p. 3.[1]

The other Plaintiff is Kirby Carter, and the Complaint [1] provides a different description as to her interest:

> Plaintiff Kirby Carter resides in DeSoto County, Mississippi. She is a U.S. citizen and a lawfully registered voter who resides in the Twenty-first Circuit Court District established by H.B. 1544 and in the Seventeenth Chancery Court District established by S.B. 2768. Kirby resides within the Majority-Minority Subdistrict established by H.B. 1544 and S.B. 2768 in the Twenty-first Circuit Court District and the Seventeenth Chancery Court District. Carter plans to vote in the November 2026 general election, and as a White voter within the Majority-Minority Subdistrict, her vote is unconstitutionally diluted based on race.

[1] at p. 4.

As noted previously, the Plaintiffs contend that the subject legislation violates the Fourteenth and Fifteenth Amendments to the United States Constitution, Section 2 of the Voting Rights Act, and Section 87 of the Mississippi Constitution.

The subject Motions to Intervene [15, 32] followed shortly after the July 2, 2026 filing of the Complaint [1].

---

[1] Again, as to Ligon and Williams, the Complaint [1] provides the same description *verbatim*. *See* [1] at p. 4.

*Standard*

There are two different types of intervention—intervention as of right and permissive intervention. *See* FED. R. CIV. P. 24.

"Intervention as of right is governed by Rule 24(a)[.]" *Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001). Under that Rule, in the absence of an unconditional right to intervene by federal statute, "the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2).

To intervene as of right, the intervenor must meet four requirements:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Ford*, 242 F.3d at 239 (quoting *Taylor Comm'ns Grp., Inc. v. Southwest Bell Tel. Co.*, 172 F.3d 385, 387 (5th Cir. 1999)).

Permissive intervention is governed by Rule 24(b). *See United States ex rel Hernandez v. Team Finance, LLC*, 80 F.4th 571, 575 (5th Cir. 2023). Rule 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). "Rule 24(b)(2) provides for permissive intervention when (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *LULAC, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989).

6

*Analysis and Discussion*

Prior to addressing the merits of intervention itself, the Plaintiffs raise preliminary arguments that the potential intervenors lack standing and that intervention would otherwise be futile. Since those arguments are potentially dispositive of the intervention requests, the Court will address them first.

I.      *Preliminary Matters*

The Court begins, as the Plaintiffs did, with standing before turning to futility.

A.      *Standing*

Generally speaking, "[t]o reach the merits of a case, an Article III court must have jurisdiction. One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662, 139 S. Ct. 1945, 204 L. Ed. 2d 305 (2019) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704, 133 S. Ct. 2652, 186 L. Ed. 2d 768 (2013)) (internal quotation marks omitted). There are three elements of standing, which "are (1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Id*. (citations omitted).

In their respective Response Memoranda [39, 48], the Plaintiffs contend that both requests to intervene should be denied because the potential intervenors cannot show "a personalized, concrete injury in fact that is caused by the conduct complained of and redressable by this Court." [39] at p. 4; [48] at p. 3. But, in making this argument, Plaintiffs wholly omit one critical point— that is, that the proposed intervenors here seek to intervene *as Defendants* in an action over which this Court *already* possesses jurisdiction. In other words, the proposed intervenors do not seek to

"invok[e] the power of a federal court." *Bethune-Hill*, 587 U.S. at 662, 139 S. Ct. 1945 (quoting *Hollingsworth*, 570 U.S. at 704, 133 S. Ct. 2652).

The Plaintiffs cite non-binding cases from other Circuits, such as *Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996) and *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998), to support their position that intervenors must demonstrate standing. Their reliance on these cases is misplaced.

In addition to the fact that it is not binding, the Fifth Circuit has expressly declined to adopt the *Mausolf* reasoning. *See Ruiz v. Estelle*, 161 F.3d 814, 831-32 (5th Cir. 1998), abrogated on other grounds by *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017). There, the Fifth Circuit, recognizing a split of authorities, specifically held "[w]e find the better reasoning in those cases which hold that Article III does *not* require intervenors to possess standing." *Id*. at 832 (emphasis added). Additionally, both *Mausolf* and *Shalala* predate the Supreme Court's 2019 decision in *Bethune-Hill*, wherein it made clear that only the person seeking the power of a federal court must establish standing. *Bethune-Hill*, 587 U.S. at 662, 139 S. Ct. 1945.

Although it could provide further explanation as to the fallacy of the Plaintiffs' argument on this point, the Court finds it unnecessary to do so.

This Court, in line with Fifth Circuit precedent and consistent with the manner in which other district courts in this Circuit have addressed this issue, finds that the proposed intervenors, who again seek to intervene as Defendants in a pending case, need not establish standing. As just one example, the District Court for the Southern District of Mississippi has held, "[s]tanding is not required . . . if the nonparties seek intervention in a pending case and 'the ultimate relief sought by them is also being sought by at least one subsisting party with standing to do so.'" *State Farm Fire*

8

*and Cas. Co. v. Hood*, 266 F.R.D. 135, 140 (S.D. Miss. 2010) (quoting *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006)) (emphasis removed; additional citation omitted). This is the scenario the Court faces here. The Plaintiffs' standing arguments are unpersuasive and squarely rejected.

> *B.    Futility*

As an additional preliminary issue, the Plaintiffs contend that intervention should be denied on futility grounds. The Fifth Circuit has recently held that arguments of this nature must be addressed prior to delving into the merits of a request to intervene: "[f]utility analyses are 'threshold matters that a district judge must conduct before turning to a consideration of the factors listed in Rule 24(a) and (b).'" *United States v. Tex.*, --- F.4th ---, 2026 WL 1983151, at *3 (5th Cir. July 9, 2026) (quoting *Pin v. Texaco, Inc.*, 793 F.2d 1448, 1450 (5th Cir. 1986)) (emphasis removed; punctuation omitted).

Here, the Plaintiffs contend that Meacham and the Organizational Intervenors' respective requests to intervene would be futile because they have not "offered a legally sufficient or colorable defense to the challenged statute or otherwise offered any explanation as to why their defenses to Plaintiffs' claims are not futile." [48] at p. 7; *see also* [39] at p. 7 (raising same argument).

Recently, the Fifth Circuit affirmed a district court's denial of a request to intervene, holding that the district court "correctly denied intervention after concluding that [the intervenors] *could not plausibly defend*" the [relevant] claim." *U.S. v. Tex.*, 2026 WL 1983151 at *1 (emphasis added).

In her proposed Answer, Meacham contends that the Complaint [1] should be dismissed for failure to state a claim, failure to join necessary parties, and laches. *See* [15], Ex. 4 at p. 1, 10. In their proposed Answer, the Organizational Intervenors list six affirmative defenses:

9

1. Plaintiffs have failed to state a claim upon which relief can be granted.

2. Plaintiffs lack standing because they have not alleged an injury in fact that is concrete, particularized, and actual or imminent; fairly traceable to Defendants' conduct; and redressable by the requested relief.

3. Plaintiffs' claim are barred, in whole or in part, by principles of sovereign immunity, legislative immunity, and/or other applicable immunities.

4. Plaintiffs' requested relief is barred or limited by principles governing judicial intervention in ongoing election processes, including the *Purcell* principle and other principles of equity.

5. Plaintiffs' requested relief is barred or limited by the doctrine of *laches*.

6. Plaintiffs' requested relief is overbroad and exceeds the scope of any alleged injury or violation.

[32], Ex. 1 at p. 9-10.

The Plaintiffs attempt to downplay all of these defenses as futile, essentially asserting that there can be no plausible defense to the allegations of their Complaint [1]. That position oversimplifies a case of this nature. As the Organizational Intervenors point out, more often than not Voting Rights cases "are fact-intensive cases typically requiring a full trial, rather than summary resolution." [52] at p. 6. For instance, the District Court for the Northern District of Florida has recently held that "Plaintiffs' discriminatory intent claims, which require a fact intensive examination of the record, are particularly unsuited for resolution at the summary judgment stage. This is because the legislature's motivation is itself a factual question." *Fla. State Conf. of NAACP v. Lee*, 576 F. Supp. 3d 974, 983 (N.D. Fla. 2021) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999)) (additional citation and internal quotation marks omitted).

10

Additionally, the Court notes that one of the defenses Meacham and the Organizational Intervenors both raise in their respective proposed Answers is laches. "[T]o succeed on a defense of laches, a defendant must show (1) a delay on the part of the plaintiff in instituting suit; (2) that is not excused; and (3) that results in undue prejudice to the defendant's ability to present an adequate defense." *EEOC v. Ryan's Pointe Houston, LLC*, 2025 WL 783429, at \*14 (S.D. Tex. Jan. 21, 2025) (quoting *EEOC v. Rock-Tenn Servs. Co.*, 901 F. Supp. 2d 810, 832 (N.D. Tex. 2012); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 708 (5th Cir. 1994)). "Whether laches bars an action in a given case *depends upon the circumstances of that case*[.]" *Env. Def. Fund, Inc. v. Alexander*, 614 F.2d 474, 478 (5th Cir. 1980) (emphasis added).

Here, the proposed intervenors emphasize the significant delay between when the subject legislation was passed into law—April 2025—and the present lawsuit being filed—July 2, 2026. Although the Plaintiffs argue that any delay is excusable due to "an intervening clarification of the law . . . and the fact that even DeSoto County legislators, let alone the DeSoto County populace, were 'misled' about the laws' effect or otherwise didn't know about the impending creation of the subdistrict at issue," the Court views these arguments as precisely the type of matters that warrant further exploration—not summary disposition. [39] at p. 10-11 (citations omitted).

The Court need not walk through all of the other defenses that may be applicable, as the same point remains—the Plaintiffs' futility arguments miss the mark. The Court rejects them in full.

*II.     Intervention*

Having resolved these threshold arguments, the Court turns to the merits of the intervention requests. As noted previously, both Meacham and the Organizational Intervenors seek to intervene as of right or, alternatively, by permission. The Court begins with intervention as of right.

11

A.      *Intervention as of Right*

As previously referenced, to intervene as of right, a potential intervenor must meet four requirements:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Ford*, 242 F.3d at 239 (citations omitted).

"Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007) (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

i.      *First Requirement*

The analysis as to the first requirement—timeliness—encompasses four sub-factors, which are:

> (1) The length of time during which the would-be intervenor knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Ford*, 242 F.3d at 239 (quoting *Sierra Club*, 18 F.3d at 1205).

Meacham initially filed her Motion to Intervene [15] on July 8, 2026—less than one week after the lawsuit was initiated. Similarly, the Organizational Intervenors filed their Motion [32] on July 16, 2026—two weeks after the Complaint [1] was filed. No hearings have yet occurred, and

Meacham and the Organizational Defendants have attached to their filings proposed substantive responses to the pending Motion for Preliminary Injunction [3]. In the Court's view, the proposed intervenors have taken substantial steps to act swiftly and diligently and minimize the disruption that their respective interventions might cause.

In response to both requests, the Plaintiffs contend that the "intervention motion is premature and thus not timely. The Fifth Circuit has cautioned against employing intervention as of right too early." [39] at p. 11-12; [48] at p. 19. To support their contention in this regard, the Plaintiffs rely on the Fifth Circuit's 1977 decision in *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977). The Fifth Circuit there concluded that "a rule making knowledge of the pendency of the litigation the critical event would be unsound because it would induce both too much and too little intervention. It would encourage individuals to seek intervention at a time when they ordinarily can possess only a small amount of information concerning the character and potential ramifications of the lawsuit, and when the probability that they will misjudge the need for intervention is correspondingly high." *Id*. at 264-65.

To state it simply, *Stallworth* addressed an entirely different factual scenario and has no applicability here. In fact, the Plaintiffs here seek a preliminary injunction which, if granted, would potentially have an immediate and drastic effect on the interests of the proposed intervenors. A conclusion that their request is premature under these circumstances would defy logic. Notably, the Plaintiffs point to no case where such a conclusion has been reached on remotely similar facts.

The Court has no trouble concluding that the applications for intervention are timely.

ii.      *Second Requirement*

Next, the applicant "must have an interest relating to the property or transaction which is the subject of the action[.]" *Ford*, 242 F.3d at 239.

Meacham contends that she possesses an interest in this case because "[r]eopening or creating a new qualification deadline would require [her] to not only undergo the qualification process again, but would also lead to her incurring additional financial and temporal expenses in extending her campaign beyond the November 2026 General Election or extending it to a pool of candidates not already qualified." [16] at p. 6. The Plaintiffs argue:

> Plaintiffs don't challenge her ability to run for office without having to requalify or repay a qualifying fee. And where the State will presumably defend and this Court will ultimately decide the lawfulness of the subdistrict, Meacham can rest assured that the electoral process will be administered in a fair and lawful manner. That might mean that she is elected not only by the subdistrict's voters, but by voters within the entire jurisdiction that she seeks to preside over. And it might even mean that she draws an additional opponent. Regardless, she has no interest in deciding which qualified voters elect her, nor does she have any interest in which qualified opponent she faces.

[39] at p. 12.

Yet again, the Plaintiffs miss the mark. Despite their reference to the fact that they do not challenge her ability to run for office without having to requalify or repay a qualifying fee, Meacham's interest goes further than that. As she pointed out, should this Court grant the Plaintiffs' request in this litigation, it could—indeed, likely would—lead to her incurring additional financial and temporal expenses. Meacham has an interest in this litigation.

Concerning the Organizational Intervenors, the Plaintiffs argue that "the organizations themselves have no interest in the subdistrict at issue or the voting imbalance between the subdistrict and the remainder of DeSoto County. Rather, their only interest in this case is to remedy a denial of the right to vote with a proposal that would still lead to an electoral scheme that segregates white voters from black voters without any justifiable reason." [48] at p. 20.

14

The Court disagrees. Robert Tipton, Jr., who currently serves as President of the DeSoto County NAACP, specifically states in his declaration that the entity works to achieve multiple objectives, including the elimination of racial prejudice and taking lawful action to secure the elimination of racial discrimination. *See* [32], Ex. 3 at p. 3. He also states that the DeSoto County NAACP has members who reside throughout the county, including with the challenged subdistrict. *See id*. Dorcas E. Washington, the Executive Director of Delta Sigma Theta Sorority, executed a declaration that indicated a similar mission for that entity and that it has members who live within the challenged subdistrict. *See* [32], Ex. 4.

The Court accepts the Organizational Intervenors' arguments in this regard. It would be hard-pressed to conclude that those entities lack an interest in this litigation.

### iii.    Third Requirement

The third requirement mandates that a proposed intervenor "be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest[.]" *Ford*, 242 F.3d at 239. The potential intervenors easily satisfy this requirement. As noted previously, the Plaintiffs seek an immediate judicial declaration that the subject litigation is unlawful, as well as a preliminary injunction regarding the upcoming election. The disposition of this litigation in the Plaintiffs' favor would certainly impact the potential intervenors' articulated interests.

### iv.    Fourth Requirement

Lastly, a proposed intervenor must show that the asserted interest "must be inadequately represented by the existing parties to the suit." *Id*.

15

The Plaintiffs argue that the State is duty-bound to defend the constitutionality of Mississippi statutes and, therefore, the potential intervenors lack an independent interest not already represented in this litigation.

This argument is easily disposed of. As to Meacham, while her interests may in some ways overlap with those of the State, she has a particularized interest to ensure that there is no alteration to the expired qualified period and/or a delayed election. This satisfies the fourth requirement.

The Organizational Intervenors point out multiple ways in which their interests diverge from the State, one of which is that the State's Response Memorandum [43] does not defend the subdistrict on Section 2 grounds. The Organizational Intervenors contend that this is significant because their "central defense is that Section 2 of the VRA may require a district like the ones Plaintiffs challenge, and that this defense independently defeats a constitutional attack on the subdistrict." [52] at p. 16.

This is one of multiple ways in which the State does not adequately represent the Organizational Intervenors' interests. They have satisfied the fourth requirement.

*v.* *Conclusion*

Ultimately, while the proposed intervenors bear the burden to establish the right to intervene, "Rule 24 is to be liberally construed." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (quoting *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)). Furthermore, "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Id*. (citations and quotation marks omitted).

Applying this standard and relying on its analysis of the four requirements for intervention as of right, the Court finds that the proposed intervenors have carried their burden to intervene in this matter.

*B.       Permissive Intervention*

Even if intervention as of right were inappropriate, the Court would grant permissive intervention. As noted previously, "Rule 24(b)(2) provides for permissive intervention when (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Clements*, 884 F.2d at 189 n.2.

The Court has already concluded that the proposed intervenors' requests to intervene are timely, both of which were filed within two weeks of the initiation of the litigation. Additionally, the proposed intervenors' defenses have a common question of law or fact with this litigation. Finally, the proposed intervenors have taken steps to minimize any delay that their intervention might cause. They have attached to their filings proposed Answers and Responses to the pending Motion for Preliminary Injunction [3]. They have not sought a continuance of the upcoming hearing. They simply desire to participate to protect their interests. Again, if intervention as of right were not available, the Court would grant permissive intervention.

*Conclusion*

Both Motions to Intervene [15, 32] are GRANTED. The Clerk of Court shall update the docket to reflect such.

The Intervenors shall immediately file on the docket their respective Answers and Responses to the pending Motion for Preliminary Injunction [3] (as were attached as Exhibits to their respective Motions [15, 32]). In light of this ruling, the Intervenors are permitted to participate in the upcoming hearing on the Motion for Preliminary Injunction [3].

SO ORDERED this the 29th day of July, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

17